CARLIE CHRISTENSEN, United States Attorney (#633)
D. LOREN WASHBURN, Assistant United States Attorney (#10993)
Attorneys for the United States of America
185 South State Street, Suite 300
Salt Lake City, Utah 84111-1506
Telephone: (801) 524-5682
Facsimile: (801) 524-6924

FILED
U.S. DISTRICT COURT
2011 JUN 29 P 12: 26
DISTRICT OF UTAH
BY:_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| UNITED STATES OF AMERICA, | INDICTMENT |
|---|---|
| Plaintiff, | Case No. |
| vs. | |
| WAYNE REED OGDEN, TERRY PAUL OGDEN, | VIOS. Wire Fraud – 18 U.S.C. § 1343; Securities Fraud – 15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. § 240.10b-5. Sale of Unregistered Securities – 15 U.S.C. §§ 77e, 77x. |
| Defendants. | |

Case: 2:11-cr-00543
Assigned To : Stewart, Ted
Assign. Date : 6/29/2011
Description: USA v.

The Grand Jury Charges:

## INTRODUCTORY ALLEGATIONS

At all times relevant to the Indictment

1. WAYNE REED OGDEN was a convicted felon, having been convicted of theft by deception and money laundering in 1997, who had been ordered as part of his

1

conditions of parole not to participate in any activity related to the solicitation of investments or financial products. WAYNE OGDEN made the day-to-day decisions for PARADIGM ACCEPTANCE LLC. and was involved in soliciting investments from potential investors.

2. TERRY PAUL OGDEN was the brother of WAYNE OGDEN. TERRY OGDEN was an owner of PARADIGM ACCEPTANCE, LLC. TERRY OGDEN was the signer on PARADIGM bank accounts and acted as a point of contact between PARADIGM and its investors.

3. PARADIGM ACCEPTANCE, LLC, ("Paradigm") was a Nevada Limited Liability Company owned by TERRY OGDEN and A.S. but controlled by WAYNE OGDEN. Between 2005 and 2006 the DEFENDANTS operated Paradigm as a Ponzi scheme, using capital from later investors to pay "profits" to early investors. In total, Paradigm collected approximately $29,000,000 from approximately 100 investors. Notwithstanding that Paradigm lost money (Paradigm realized a net loss of $2,700,000 from its business activities in 2005 and 2006) the DEFENDANTS made payments of more than $23,000,000 to investors, representing these payments as profits from the operation of the business. The DEFENDANTS also paid themselves almost $2,000,000 from PARADIGM.

## COUNTS ONE THROUGH SIX

(Wire Fraud, 18 U.S.C. §1343)

4. Beginning in approximately September, 2005, and continuing to in or about September, 2006, in the Central Division of the District of Utah and elsewhere,

**WAYNE REED OGDEN, and
TERRY PAUL OGDEN**

the defendants herein, did knowingly devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

### THE SCHEME AND ARTIFICE TO DEFRAUD

5. Between 2005 and 2006, DEFENDANTS WAYNE OGDEN and TERRY OGDEN solicited investments in Paradigm. The DEFENDANTS told investors that Paradigm would use their funds to pay off the debts of financially distressed homeowners so the homeowners could refinance their homes. The DEFENDANTS represented to investors that Paradigm would then assist the homeowners to renegotiate their mortgages at a lower rate, providing overall savings to the homeowners. In return, the homeowners would pay Paradigm a fixed fee of $1,500 and an additional fee depending on the amount they saved from renegotiating their debts and refinancing their mortgages.

6. It was further part of the scheme and artifice to defraud that the DEFENDANTS told investors and potential investors that their investments would be secured by the property of the homeowners and that, consequently, their investment would bear little or no risk.

7. It was further part of the scheme and artifice to defraud that the DEFENDANTS told investors and potential investors that they would receive returns in excess of prevailing market rates. The rate of return promised by the DEFENDANTS varied by investor with some being promised as much as 100% return on investment in a matter of days. More typically, the DEFENDANTS promised profits of 20% of invested funds in two months.

8. It was further part of the scheme and artifice to defraud that the DEFENDANTS created promissory notes reflecting the investments of investors. The promissory notes contained promised rates of returns and the dates of the payments. In addition, the promissory notes purported to bear the signatures of the distressed homeowners who would be assisted with the invested funds. In fact, these signatures were not the actual signatures of the homeowners but were forged by the DEFENDANTS or an employee of Paradigm.

9. It was further part of the scheme and artifice to defraud that the DEFENDANTS told investors that the returns on their investment would be generated by charging fees to homeowners who were assisted by Paradigm.

10. It was further part of the scheme and artifice to defraud that DEFENDANTS used only five percent of the invested funds to fund the distressed homeowner business described to investors. The majority of funds were used to make payments to earlier investors, to pay the DEFENDANTS personal expenses and salaries, to pay salaries of other Paradigm employees, and to pay office expenses and overhead.

4

11. It was further part of the scheme and artifice to defraud that the DEFENDANTS, knowing that Paradigm never generated a net profit, periodically paid certain investors "returns" on their investments in Paradigm and falsely represented to investors that these "returns" were profit, whereas in truth and fact, as the DEFENDANTS well knew when they made these representations, the "returns" were derived from the investors' own invested capital or from capital obtained from new investors.

12. It was further part of the scheme and artifice to defraud that the DEFENDANTS falsely represented to investors and potential investors that Paradigm made substantial profits from its business activities.

13. It was further part of the scheme and artifice to defraud that the DEFENDANTS, knowing that they had been operating a Ponzi scheme by paying early investors with later investors money, continued to solicit investments from new investors. By June, 2006, the DEFENDANTS had received numerous complaints from investors who had not been paid the promised profits and who demanded that their invested capital be repaid to them. Further, by June, 2006, the DEFENDANTS had caused Paradigm to issue checks to investors without sufficient funds in Paradigm's bank accounts to fund those checks. Nonetheless, during June 2006 and beyond the DEFENDANTS continued to solicit additional investments from new investors.

14. It was further part of the scheme and artifice to defraud that as the Paradigm scheme began to unravel, the DEFENDANTS began making excuses for their failure to

pay investors and began to make representations to lull the investors into believing that they would eventually be paid. Specifically, the DEFENDANTS told investors:

    A.    That there were holds on funds due to bank error and the fedwire system;

    B.    That homeowners mortgages would soon be closing, which would provide funds to pay back all of the investors;

    C.    That loan closings had been delayed, causing delays in paying investors;

    D.    That if the investors involved attorneys it would result in further delays and would possibly compromise Paradigm's ability to pay investors.

15.    It was further part of the scheme that the DEFENDANTS made, and caused others to make, untrue statements of material fact and failed to state, and caused others to fail to state, material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; more specifically, the DEFENDANTS made the following material misrepresentations and failed to inform investors of the following material facts:

    A.    The DEFENDANTS failed to tell investors and potential investors that WAYNE OGDEN had previously been convicted of communications fraud and was on parole at the time the DEFENDANTS were soliciting investments for Paradigm;

    B.    The DEFENDANTS failed to tell investors and potential investors that WAYNE OGDEN's conditions of parole prohibited him from soliciting investments and controlling investors' money;

C. The DEFENDANTS failed to tell later investors that earlier investors had been paid later than promised and that many investors were never paid profits and lost their invested capital as well.

D. The DEFENDANTS told numerous investors and potential investors that Paradigm was profitable, whereas the DEFENDANTS then and there well knew that Paradigm was not profitable but was losing money;

E. The DEFENDANTS guaranteed numerous investors and potential investors that their investments in Paradigm would pay substantial fixed returns, even after the DEFENDANTS were aware that similar promises made to earlier investors had not been fulfilled.

F. The DEFENDANTS told investors that their investments in Paradigm would be collateralized by property of homeowners and therefore the investments bore little risk when in fact the investments were either dramatically undercollateralized or were not collateralized at all.

### STATUTORY ALLEGATIONS

16. On or about the dates listed below, in the Central Division of the District of Utah,

**WAYNE REED OGDEN, and
TERRY PAUL OGDEN**

the DEFENDANT herein, for the purpose of executing and attempting to execute the aforementioned scheme and artifice to defraud and to obtain money and property by false

and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted, in interstate and foreign commerce, by means of wire, radio, and television communication, writings, signs, signals, pictures, and sounds, namely the uses of interstate wires identified below:

| Count | Date | Description of Wire Communication |
|---|---|---|
| 1 | 6/29/2006 | Fax from Dixie Title & Closing in Alabama to Paradigm in Mesquite Nevada, which was later provided to investors. |
| 2 | 7/27/2006 | Wire transfer of $1,500 from Paradigm's bank account in Utah to E.O.'s bank account in California. |
| 3 | 8/3/2006 | Telephone call between K.A. in California and TERRY OGDEN in Nevada, regarding investment returns |
| 4 | 8/3/2006 | Wire transfer of $1,500 from Paradigm's bank account in Utah to R.B.'s bank account in Canada. |
| 5 | 9/12/2006 | Wire transfer of $81,000 from S.W.'s bank account in Nevada to Paradigm's bank account in Utah. |
| 6 | 9/18/2006 | Email from TERRY OGDEN to multiple investors |

All in violation of 18 USC §§ 1343 and 2.

## COUNT SEVEN

(Securities Fraud, 15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. § 240.10b-5; 18 U.S.C. § 2)

19. The factual allegations of paragraphs 5 through 15 above are incorporated herein by reference.

20. Beginning September, 2005 and continuing at least until in or about September, 2006, in the Central Division of the District of Utah,

**WAYNE REED OGDEN, and**

8

## TERRY PAUL OGDEN

DEFENDANTS herein, willfully and with the intent to defraud, and in connection with the purchase and sale of securities: (a) employed a scheme to defraud (as described in paragraphs 5 through 16 above); (b) made, and caused others to make, untrue statements of material fact and failed to state, and caused others to fail to state, material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading (as described in paragraph 15 above); and (c) engaged in, and caused others to engage in, acts, practices, and courses of business that operated as a fraud and deceit upon other persons.

21. On or about the dates set forth below, in the District of Utah and elsewhere, the DEFENDANTS, in furtherance of the fraudulent scheme described in paragraphs 5 to 16 above, used and caused others to use, the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges in connection with the following purchases and sales of securities:

| Count | Date | Transaction |
|---|---|---|
| 7 | 9/12/2006 | Promissory note between TERRY OGDEN and Paradigm, and S.W. |

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

## COUNT EIGHT

(Sale of Unregistered Securities , 15 U.S.C. §§ 77e, 77x;18 U.S.C. § 2)

9

22. The factual allegations of paragraphs 5 through 15 above are incorporated herein by reference.

23. Beginning on or about September, 2005, and continuing to at least September, 2006, in the Central Division of the District of Utah and elsewhere,

**WAYNE REED OGDEN, and
TERRY PAUL OGDEN**

DEFENDANTS herein, did willfully, by use of the means and instruments of transportation and communication in interstate commerce, and by use of the mails, sell securities of Paradigm Acceptance, LLC through the use or medium of any prospectus and otherwise when no registration statement was in effect as to such securities; and to offer to sell securities of Paradigm Acceptance, LLC through the use or medium of any prospectus or otherwise, when no registration statement was filed as to such securities.

All in violation of Title 15, United States Code, Sections 77e and 77x and Title 18, United States Code Section 2.

A TRUE BILL:

/S/
_____
FOREPERSON OF THE GRAND JURY

CARLIE C. CHRISTENSEN
United States Attorney

[signature]
_____
D. LOREN WASHBURN
Assistant United States Attorney