DAVID B. BARLOW, United States Attorney (No. 13177)
MARK Y. HIRATA, Assistant United States Attorney (No. 5087)
TANYA BEARD, Special Assistant United States Attorney (No. 9106)
Attorneys for the United States of America
185 South State Street, Suite 300
Salt Lake City, Utah  84111
Telephone:  (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 2:11-cr-00543-TS |
| Plaintiff, | : | |
| | : | SUPERSEDING INDICTMENT |
| v. | : | |
| | | Viol. 18 U.S.C. § 1343 (Wire Fraud); |
| WAYNE REED OGDEN and | : | 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. |
| TERRY PAUL OGDEN, | | § 240.10b-5 (Securities Fraud) |
| | : | |
| Defendants. | | Judge Ted Stewart |
| | : | |

The Grand Jury charges:

**BACKGROUND**

At all time relevant to this Superseding Indictment:

1. Defendant WAYNE REED OGDEN ("WAYNE OGDEN") was a convicted felon, having been convicted of theft by deception, communications fraud, pattern of unlawful conduct, and money laundering in 1998. As part of his conditions of

parole, including during the time period from September 2005 to September 2006, WAYNE OGDEN was ordered not to:

- participate, advise, consult, deal or direct another in any employment, enterprise or activity relating to the sale or solicitation of investment funds or financial products or registered or unregistered securities without the express prior written authorization of Adult Probation and Parole; and

- participate, advise, consult, deal or direct in any employment, enterprise or activity relating to the purchase, sale, investment or leasing of real property without the express prior written authorization of Adult Probation and Parole.

WAYNE OGDEN made the day-to-day decisions for PARADIGM ACCEPTANCE, LLC ("PARADIGM") and was involved in soliciting investments from potential investors through this entity.

2. Defendant TERRY PAUL OGDEN ("TERRY OGDEN") was the brother of WAYNE OGDEN, an "owner" of PARADIGM, and a signer on PARADIGM bank accounts. TERRY OGDEN also was involved in soliciting investments from potential investors and, at times, acted as a point of contact between PARADIGM and its investors.

3. PARADIGM was a Nevada limited liability company "owned" by TERRY OGDEN and A.S. but controlled by WAYNE OGDEN. From around September 2005 to around September 2006, the DEFENDANTS operated PARADIGM as a Ponzi scheme, using capital from later investors to pay "profits" to early investors. In total, PARADIGM collected approximately $29,000,000 from approximately 100 investors.

Notwithstanding that PARADIGM actually lost money (i.e., a net loss of approximately $2,700,000 stemming from its business activities during the period from September 2005 to September 2006), the DEFENDANTS made Ponzi payments of more than $23,000,000 to investors, misrepresenting these payments as profits from the operation of PARADIGM. The DEFENDANTS also paid themselves over $1,500,000 from PARADIGM.

**Counts 1 through 4**
**18 U.S.C. § 1343**
**(Wire Fraud)**

### THE SCHEME AND ARTIFICE TO DEFRAUD

4. The Grand Jury realleges and incorporates by this reference the allegations in paragraphs 1 through 3 above.

5. From around September 2005 to around September 2006, in the Central Division of the District of Utah and elsewhere,

**WAYNE REED OGDEN and**
**TERRY PAUL OGDEN,**

defendants herein, knowingly devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and did aid and abet each other therein.

/

/

## MANNER AND MEANS OF THE
## SCHEME AND ARTIFICE TO DEFRAUD

Defendants executed and intended to execute the scheme and artifice to defraud in the following manner and through the following means:

6. It was part of the scheme and artifice to defraud that the DEFENDANTS, and others acting at their direction, solicited investments in Paradigm, and made one or more of the following representations:

- PARADIGM would use investor funds solely to pay off the debts of financially distressed homeowners (i.e., personal debt and/or the outstanding balance on their mortgages) in order to enhance refinancing opportunities at better rates;

- PARADIGM would assist distressed homeowners with renegotiating their personal debts and/or mortgages at a lower rate (or obtaining new financing at a lower rate in instances where PARADIGM purportedly paid off outstanding mortgage balances), providing overall savings to the homeowners;

- In return, the homeowners would pay PARADIGM a fixed fee of $1,500 and an additional fee depending on the amount they saved from renegotiating their debts and refinancing their mortgages;

- Returns on investments would be generated by the above fees charged to distressed homeowners assisted by PARADIGM;

- PARADIGM was successful and made substantial profits from its business activities;

- Returns on investments would exceed prevailing market rates. The promised rate of return varied by investor depending on circumstances, ranging from the typical representation of 20 percent return over two months to, at times, a 100 percent return over several days; and

- Investments would be secured by the property of the homeowners and that, consequently, their investment would bear little or no risk.

7. It was further part of the scheme and artifice to defraud that the DEFENDANTS created promissory notes reflecting the investment, including promised rates of returns and the dates of payments. In many instances, the promissory notes purported to bear the signatures of distressed homeowners whom PARADIGM assisted, but were in fact signatures forged or caused to be forged by the DEFENDANTS.

8. It was further part of the scheme and artifice to defraud that, contrary to what they told investors, the DEFENDANTS used only approximately five percent of investor funds to pay off the debts of distressed homeowners. Instead, the DEFENDANTS diverted and used funds to pay their personal expenses and salaries, pay salaries of other PARADIGM employees, and pay office expenses and overhead. The vast majority of investor funds were used to make Ponzi payments as described below.

9. It was further part of the scheme and artifice to defraud that the DEFENDANTS, knowing that PARADIGM never generated a net profit, periodically paid certain investors "returns" on their investments and falsely represented to investors that these "returns" were profits, whereas in truth and fact, as the DEFENDANTS well knew when they made these representations, the "returns" were derived from the investors' own invested capital or from capital obtained from new investors.

10. It was further part of the scheme and artifice to defraud that the DEFENDANTS, knowing they were operating a Ponzi scheme, continued to solicit investments from new investors. By around June 2006, the DEFENDANTS had received numerous complaints from investors who had not been paid promised returns and who demanded the return of their invested capital. By around this same time, the DEFENDANTS issued and caused to be issued insufficient funds checks to investors. Despite these circumstances, the DEFENDANTS continued to solicit additional and new investments from both current and new investors, respectively.

11. It was further part of the scheme and artifice to defraud that as the scheme began to unravel, the DEFENDANTS began making excuses for their failure to pay investors and began to make representations which had the effect of lulling investors into believing they would eventually be paid. Specifically, the DEFENDANTS told investors one or more of the following excuses:

- Funds were on hold due to bank error and the fedwire system;

- Refinancing or new financing on homeowners mortgages would soon be closing, providing funds to pay back investors;

- Loan closings had been delayed, causing delays in paying investors; and

- If investors involved attorneys, it would result in additional delays and possibly compromise PARADIGM's ability to pay investors.

12. It was further part of the scheme and artifice to defraud that the

DEFENDANTS made and caused to be made untrue statements of material fact, and omitted and caused to be omitted material facts necessary in order to make statements, under the circumstances they were made, not misleading, including one or more of the following misrepresentations or omissions:

- PARADIGM was profitable - In truth and fact, PARADIGM was not profitable and was losing money;

- Investments in PARADIGM would pay substantial fixed returns - In truth and fact, similar promises made to earlier investors had not been fulfilled;

- Investments in PARADIGM would be collateralized by property of homeowners and therefore the investments involved little risk - In truth and fact, investments were either significantly undercollateralized or were not collateralized at all;

- Investors were not told at the time they were solicited for investments in PARADIGM that WAYNE OGDEN had previously been convicted of theft by deception, communications fraud, pattern of unlawful conduct, and money laundering and was on parole;

- Investors were not told at the time they were solicited for investments in PARADIGM that WAYNE OGDEN's conditions of parole prohibited him from:

    - participating, advising, consulting, dealing or directing another in any employment, enterprise or activity relating to the sale or solicitation of investment funds or financial products or registered or unregistered securities without the express prior written authorization of Adult Probation and Parole;

    - participating, advising, consulting, dealing or directing in any employment, enterprise or activity relating to the purchase, sale, investment or leasing of real property without the express prior written authorization of Adult Probation and Parole; and

- Investors were not told at the time they were solicited for investments in PARADIGM that earlier investors had been paid later than promised and that many investors were never paid a return and lost their invested capital.

13. On or about each of the dates identified below, the DEFENDANTS, for the purpose of executing and attempting to execute the scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted in interstate and international commerce by means of wire, radio, and television communication, writings, signs, signals, pictures, and sounds, and did aid and abet each other therein, to wit:

| Count | Date | Description of Wire Communication |
|---|---|---|
| 1 | 07/27/06 | Wire transfer of approximately $1,500 from PARADIGM's bank account in Utah to E.O.'s bank account in California. |
| 2 | 08/03/06 | Wire transfer of approximately $1,500 from PARADIGM's bank account in Utah to R.B.'s bank account in Canada. |
| 3 | 09/12/06 | Wire transfer of approximately $81,000 from S.W.'s bank account in Nevada to PARADIGM's bank account in Utah. |
| 4 | 09/18/06 | Email from TERRY OGDEN in Nevada to at least one investor in Utah. |

All in violation of 18 U.S.C. §§ 1343 and 2.

**Count 5**
**15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5**
**(Securities Fraud)**

14. The Grand Jury realleges and incorporates by this reference the factual

allegations in paragraphs 1 through 12 above.

15. From around September 2005 to around September 2006, in the Central Division of the District of Utah and elsewhere,

**WAYNE REED OGDEN and**
**TERRY PAUL OGDEN,**

defendants herein, willfully and in connection with the purchase and sale of a security did: (a) employ a device, scheme and artifice to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices and a course of business which would and did operate as a fraud and deceit upon other persons, and did aid and abet each other therein.

16. On or about the date identified below, in furtherance of the fraud scheme described in paragraphs 5 to 12 above, used and caused to be used means and instrumentalities of interstate commerce and the mails in connection with the following purchase and sale of securities:

| Date | Transaction |
|---|---|
| 09/12/06 | Investment by S.W. in PARADIGM |

/

/

/

All in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5; and 18 U.S.C. § 2.

            A TRUE BILL:

            /s/
            Foreperson of the Grand Jury

DAVID B. BARLOW
United States Attorney

MARK Y. HIRATA
Assistant United States Attorney
TANYA BEARD
Special Assistant United States Attorney

10